(May 13, 1898.)

# FELLAND v. VOLLMER MILLING AND MERCANTILE COMPANY.

[53 Pac. 268.]

CHATTEL MORTGAGE—DEED TO REAL ESTATE—FORECLOSURE.—The V. M. & M. Co., holding a chattel mortgage upon certain personal property of the firm of F. E. & Son, and also a mortgage upon real property of the firm, both of which were given to secure indebtedness due and owing from said F. E. & Son to said V. M. & M. Co., on default, fore-losed the chattel mortgage, F. E. & Son giving a deed to V. M. & M. Co. of the real estate, and thereupon the V. M. & M. Co. executed to said firm of F. E. & Son an agreement in writing conditioned that said V. M. & M. Co. would convey to said F. E. & Son, or either of them, the said personal property, consisting of a sawmill and belongings, and said real estate, if the said firm, or either of them, would pay to said V. M. & M. Co. the amount due said company from said firm at any time within a period of eight months. *Held,* such agreement did not constitute the deed a mortgage.

FRAUD.—The evidence in this case examined and held not to establish fraud.

(Syllabus by the court.)

APPEAL from District Court, Latah County.

Sweet & Steele, for Appellant.

Testimony shows the deed to have been a mortgage. If the paper can be permitted to stand at. all, and as we have not asked its cancellation, we suppose it must stand. If a partner attempts to defraud his copartner, and any other person conspires with him in that attempt, then anything they may accomplish is void, as the law does not permit a third person to conspire with a partner against a copartner. (Parsons on Partnership, 3d ed., pp. 177, 178, note i, beginning p. 112, 113, 178.) It makes no difference that the fraudulent transaction is consummated at a public sale. (Bump on Fraudulent Conveyances, 261-266.) The first point to which we direct the attention of the court is, that the purchase price was an antecedent debt. That the defeasance stated that upon the repayment to respondent of the purchase price, which was an antecedent

debt, the property should be transferred back. (*Montgomery v. Spect,* 55 Cal. 352; *Sandfoss v. Jones,* 35 Cal. 481; *Kelley v. Leachman,* 3 Idaho, 392, 29 Pac. 849; *Russell v. Southard,* 12 How. 139; 5 Meyer's Fed. Dec. 121.)

Forney, Smith & Moore, for Respondents.

If all the allegations of the complaint charging fraud are true, they are insufficient to constitute fraud upon Felland. (Cooley on Torts, 474; 1 Story's Equity, 186, 187; Kerr on Fraud and Mistake, 1, 2; 2 Pomeroy's Equity Jurisprudence, secs. 872-876.) The allegations of the complaint charging fraud are unsupported by the evidence. The deed to the forty acres of land is not a mortgage. (*Vance v. Anderson,* 113 Cal. 532, 45 Pac. 816; Jones on Mortgages, secs. 256-282; Devlin on Deeds, sec. 1115; 3 Pomeroy's Equity Jurisprudence, sec. 1196; *Henly v. Hotaling,* 41 Cal. 22; *People v. Irwin,* 14 Cal. 428; *Cornell v. Hall,* 22 Mich. 377; *Smith v. Crosby,* 47 Wis. 160, 2 N. W. 104; *Voss v. Eiler,* 109 Ind. 260, 10 N. E. 74; *Montgomery v. Spect,* 55 Cal. 352; *Horbach v. Hill,* 112 U. S. 144, 5 Sup. Ct. Rep. 81; *Conway etc. v. Alexander,* 7 Cranch, 218; *Winters v. Swift,* 2 Idaho, 61, 3 Pac. 15.) Where there is a substantial conflict in the testimony the judgment of the lower court will not be disturbed. (*Sabin v. Burke,* 4 Idaho, 28, 37 Pac. 352.) The question, whether or not a deed absolute on its face is a mortgage depends entirely upon the intention of the parties to the transaction. This intention can only be determined from their conduct and expression of intention and it leaves the matter in each case almost wholly and entirely a question of fact. There are no set rules of law that will control in every case, but one of the strongest evidences of the intention of the parties is whether or not the relation of debtor and creditor exists between grantor and grantee with reference to the consideration of the conveyance. (Jones on Mortgages, sec. 269; *Winters v. Swift,* 2 Idaho, 61, 3 Pac. 15; *Vance v. Anderson,* 113 Cal. 532, 45 Pac. 816, and cases cited; Devlin on Deeds, 1115; 3 Pomeroy's Equity Jurisprudence, sec. 1196; *Cornell v. Hall,* 22 Mich. 377; *Horbach v. Hill,* 112 U. S. 144, 5 Sup. Ct. Rep. 81 (this opinion is by Justice Field); *Conway v. Alexander,* 7 Cranch, 18 (this opinion is by Chief Justice Marshall).

HUSTON, J.—This is an action brought for an accounting, for the setting aside of a sale under a chattel mortgage, and for declaring a deed absolute upon its face to be a mortgage. The facts, as alleged in the complaint, are substantially as follows: In the month of March, 1891, plaintiff and two of the defendants, Ole Edwardson and Ole O. Edwardson, entered into a copartnership, for the purpose of engaging in the business of manufacturing lumber and doing a general sawmilling business, under the firm name and style of Felland, Edwardson & Son. In the course of their business, and between said month of March, 1891, and the third day of March, 1894, said firm had become indebted to the defendants the Vollmer Milling and Mercantile Company in the amount of $2,500, which indebtedness was evidenced by divers promissory notes executed by said firm to the said Vollmer Milling and Mercantile Company, which notes were secured by a chattel mortgage executed by said firm to said Vollmer Milling and Mercantile Company upon certain personal property described in the complaint. That all of said notes secured by said mortgage became and were due long prior to March 3, 1894. Said notes were further secured by a mortgage upon real estate described in the complaint, executed by said firm, or the members thereof. That all of said notes so secured became and were due long prior to March 3, 1894. The complaint alleges the property covered by the chattel mortgage to be of the value of $6,000, and that the real estate is of the value of $2,000. The complaint further alleges that some time prior to March 3, 1894, the said Vollmer Milling and Mercantile Company entered into an agreement with Ole Edwardson, one of the defendants, and a member of said firm of Felland, Edwardson & Son, by which it was agreed that the said mortgagee should, for the purpose of cheating and defrauding the plaintiff, foreclose said chattel mortgage, and at the sale thereunder bid in the property covered thereby for the use and benefit of said Ole Edwardson. The complaint further alleges that it was also agreed between said parties that unless the firm of Felland, Edwardson & Son should deed the property described in the real estate mortgage to the Vollmer Milling and Mercantile Company, the said real estate mortgage

would also be foreclosed, and that said property should be pur-
chased by said corporation for the sole use and benefit of the
said Ole Edwardson; it being a part of the said agreement that
as soon as the said corporation should realize enough money out
of the use of said property and proceeds of the business to pay
the indebtedness due from said firm to said corporation, or as
soon as said debt should be paid by said Ole Edwardson, all the
said property should be transferred to the said Ole Edwardson,
and that the said Vollmer Milling and Mercantile Company
should take possession of said property, and conduct and manage
the business of manufacturing saw logs into lumber, and should
account to said Ole Edwardson for the proceeds derived there-
from, until such time as the indebtedness should be paid.    The
complaint proceeds to state that a sale of the property included
in the chattel mortgage was had.    It is not pretended but the
sale was regularly and legally conducted, but the plaintiff avers
that "said sheriff's sale was conceived in fraud, and that it
was not made in good faith, and that, while regular upon its
face. it was used, and was intended to be used, by said Vollmer
Milling and Mercantile Company and said Ole Edwardson as
a means through which to cheat, defraud and deprive plaintiff
of his interest in said business and said property, etc." Not a
single fact or circumstance is stated that tends in the slightest
degree to establish fraud.    Something more is required, we ap-
prehend, in a pleading intended to establish or set forth a
fraudulent transaction, and seeking relief therefrom, than a
mere reiteration of the words "cheat, wrong and defraud."    The
complaint shows a *bona fide* indebtedness due and owing from
the firm of Felland, Edwardson & Son to the Vollmer Milling
and Mercantile Company; that the same was secured by a chat-
tel mortgage and a real estate mortgage.    The chattel mort-
gage was regularly, properly and legally foreclosed after default
made.    No fraudulent acts on the part of the mortgagee are
shown, or attempted to be shown.    The plaintiff says the sale
was "conceived in fraud," but there is no statement that such
alleged fraudulent conception ever culminated in a birth, to
the injury, damage or deception of plaintiff.    Conceding that
the mortgagee had agreed, after the sale under the chattel mort-

gage, that he would convey the mortgaged property to Edwardson, either for a consideration or without consideration, wherein is the plaintiff defrauded thereby? After the sale the property became the property of the purchaser, and, whether that purchaser was the mortgagee or another, he had the right to dispose of it (there being no right of redemption) to whomsoever he saw fit, and upon such terms as he pleased.

It further appears from the complaint that, as an additional security for the sum owing from the firm of Felland, Edwardson & Son to the Vollmer Milling and Mercantile Company, the firm had assigned to said Vollmer Milling and Mercantile Company certain notes and accounts, the property of said firm. By an order of the court this matter was submitted to a referee, who reported to the court that the sum of $601.79 had been collected by the Vollmer Milling and Mercantile Company upon said notes and accounts, which sum was credited upon the indebtedness of said firm to said Vollmer Milling and Mercantile Company. It is also alleged in the complaint that after the sale under the chattel mortgage the Vollmer Milling and Mercantile Company, mortgagee in the real estate mortgage referred to as executed to them by the said firm, threatened to foreclose the same, and by means of said threats induced the members of said firm to convey to said mortgagees, by deed, the real estate described in said mortgage; said Vollmer Milling and Mercantile Company, at the time of the execution of such deed, giving to said firm an instrument in the following words, viz.:

"Vollmer, Idaho, March, 1894.

"This is to certify that we do hereby agree to sell to and give to Felland, Edwardson & Son, or either of them, a warranty deed to lot four (4), section three (3), township thirty-nine (39) north, range 3, W. B. M., any time within eight (8) months from date; provided, we are at that time in possession of said lot of land; and provided, further, that said Felland, Edwardson & Son, or either of them, shall pay or cause to be paid to us the amount of money that shall at that time be due us by the said Felland, Edwardson & Son on notes and accounts, together with the purchase price of the above-described land,

and the sawmill located on same; purchase price amounting to $1,525.00.

> "THE VOLLMER MILLING AND MERCANTILE
>      COMPANY,
>                    "By OSCAR LARSON,
>                              "Sect. & Treas."

This paper would seem to be a direct negation of the whole theory of the plaintiff, that a conspiracy was entered into between the Vollmer Milling and Mercantile Company and Edwardson to defraud him. The plaintiff has the same option of purchase, and upon the same terms, under this instrument, that his partners, or either of them, have. It was given with full knowledge of its contents by all the members of said firm, and would appear to have been acquiesced in by them all. It was given after the title to both the real and personal property mortgaged had vested in the Vollmer Milling and Mercantile Company. Such action by the Vollmer Milling and Mercantile Company at this time seems hardly consistent with the theory that they were seeking to "cheat, wrong and defraud the plaintiff for the benefit of Edwardson." It appears, moreover, that, at the sale under the chattel mortgage, Edwardson had procured the attendance of a friend, John Oleson, who, it is shown, was a man of almost unlimited means, and who, as he states himself, attended said sale to look after and protect the interests of his friend Edwardson; yet said Oleson declined to bid more than $725 for property which it is claimed by the plaintiff was worth at the time $6,000. On the seventh day of July, 1894, the plaintiff sold and transferred to his copartners, Ole Edwardson and Ole O. Edwardson, all his interest in said firm, and in the property of said firm, except one-half interest in such of the notes and accounts theretofore assigned by said firm to the Vollmer Milling and Mercantile Company as should remain in the hands of said Vollmer Milling and Mercantile Company after the indebtedness of said firm to them had been paid, which sale and transfer were evidenced by an agreement, in writing, duly executed by all of the members of said firm, and which declared said copartnership dissolved. The position of

the plaintiff is somewhat unique.   He claims that he has been.
"cheated, wronged and defrauded" by the acts of his copartner,.
in conspiracy with the defendant the Vollmer Milling and
Mercantile Company, by which he has been induced to part with
valuable property and interests; and he brings suit to effect a
purpose which, if consummated, would benefit his alleged
fraudulent copartner equally with himself.   It would not be an
easy matter to adjust the equities in this case, if equities there
were; but we have earnestly and laboriously examined the rec-
ord in this case, and we are unable to find a hook whereon to.
hang an equity.   There is much testimony as to conversations
between the parties, and between other persons, and certain of
the parties to the suit; but, to our mind, there is an utter fail-
ure to establish any such agreement between Edwardson and
the Vollmer Milling and Mercantile Company as is set forth
in the complaint.   The very most that is shown by the evidence
is a desire on the part of the Vollmer Milling and Mercantile
Company to befriend their debtors in so far as that can be done
without jeopardizing their own interests.   The claim of plain-
tiff that the mortgaged property was sold for a sum greatly less
than its actual value is not borne out by the evidence.   By none
of the definitions which we have been able to find can fraud be-
predicated upon the facts shown or attempted to be shown by
the record in this case.   (Cooley on Torts, 2d ed., sec. 473 et
seq.; Kerr on Fraud and Mistake, sec. 1; 2 Pomeroy's Equity
Jurisprudence, sec. 873 et seq.)

Plaintiff contends that the deed executed by himself and his.
copartners to the Vollmer Milling and Mercantile Company on.
the 8th of March, 1894, is, by reason of the agreement of the
same date executed by the Vollmer Milling and Mercantile Com-
pany to them, a mortgage. We cannot agree with this contention.
The agreement was for the conveyance, not only of the real es-
tate deeded, but of the personal property purchased by the Voll-
mer Milling and Mercantile Company at the sale under the
chattel mortgage, upon the payment by the said firm, or either
of them, within eight months, of the amount at that time due
from the firm to said Vollmer Milling and Mercantile Company.
It is not claimed or pretended that any payment or tender of

payment of the indebtedness due from the firm of Felland, Edwardson & Son, or any part of it, has ever been made; and it would seem that the plaintiff now claims that the Vollmer Milling and Mercantile Company should account to the plaintiff for the proceeds of said mill property from the time said Vollmer Milling and Mercantile Company went into possession under the foreclosure of the chattel mortgage, and should further pay over to plaintiff any excess shown by such accounting over and above the amount of the indebtedness due from said firm to said Vollmer Milling and Mercantile Company. We know of no principle of equity upon which such a claim can be based. The plaintiff claims that he must be allowed to redeem the personal property sold under the chattel mortgage, as well as the real estate deeded, because he says the deed of the real estate was given and intended to operate as a mortgage. If this latter proposition were correct—which it is not—the recognition of the plaintiff's claim would involve such a vicarious prolongation of the principles of equity as we can find no authority for. Under none of the authorities we have been able to find can the deed in this case be held to be a mortgage. It seems to us that the findings of the court below in this case are fully supported by the evidence. The judgment of the district court is affirmed, with costs to respondents.

Sullivan, C. J., and Quarles, J., concur.